# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

IN RE:

ROBERT L. SCHWARTZ,

     Debtor.                               /         Case Nos.  13-10087, 13-10302, 13-11100

PAMELA LIGGETT,                         Bankruptcy Case Nos. 10-71142, 11-05830, 12-05634

     Appellant,

v.

ROBERT L. SCHWARTZ,

     Appellee.

                                   /

## OPINION AND ORDER AFFIRMING BANKRUPTCY APPEALS

This matter is again before the court, this time on three separate appeals from the bankruptcy court.  Appellant Pamela Liggett and Appellee Robert L. Schwartz obtained a divorce from Oakland County Circuit Court in 1999.  Pursuant to the terms of that divorce, the state court ordered Schwartz to pay Liggett half of all of his IRAs and 401k plans.  At some point, Schwartz lost track of one of the IRAs he owned and did not pay Liggett the 50% to which she was entitled.  When Schwartz filed for Chapter 13 bankruptcy protection in 2010, he disclosed his error to Liggett who then sought a determination from the bankruptcy court that Schwartz had committed conversion, thereby rendering his debt non-dischargeable and entitling Liggett to treble damages and attorneys' fees.  Schwartz did not contest that he owed Liggett 50% of the IRA and

that this debt was non-dischargeable, but disputed that he had committed conversion and that Liggett was entitled to treble damages on her claim.  After substantial litigation, the bankruptcy court rejected Liggett's argument that she was entitled to a conversion remedy, determined that Liggett's 50% share of the IRA was non-dischargeable, and confirmed Schwartz's Chapter 13 bankruptcy plan.

Liggett appealed all three determinations to this court.  The court ruled that because of the value of his assets, Schwartz was ineligible for Chapter 13 bankruptcy protection, and dismissed Liggett's further appeals for lack of jurisdiction.  On remand, the bankruptcy court converted Schwartz's bankruptcy petition to a Chapter 11 petition. The bankruptcy court again rejected Liggett's conversion claim, and confirmed Schwartz's Chapter 11 bankruptcy plan.

In her current appeal, Liggett argues that the bankruptcy court erred by: (1) dismissing Liggett's adversary complaint alleging non-dischargeability on the basis of conversion; (2) determining the amount of non-dischargeable debt Schwartz owed to Liggett; and (3) confirming Schwartz's Chapter 11 bankruptcy plan.  After hearing oral argument from the parties on March 11, 2014, and for the following reasons, the court will affirm the bankruptcy court's orders.

2

# I. BACKGROUND[1]

## A. The Divorce

In 1999, Schwartz filed for divorce from Liggett in Oakland County Circuit Court. (Chapter 13 Adversary Proceeding, Dkt. # 33, at 11.)  The circuit court entered a judgment of divorce on November 20, 2000.  (*Id.* at 12.)  In relevant part, the divorce judgment decreed:

> any IRA or 401K Plans shall be divided equally by and between the parties by way of a Qualified Domestic Relations Order (QDRO) if necessary.  The costs of preparing the QDRO[]s necessary to effectuate this transfer shall be shared equally by and between the parties.  In the event there are any gains or losses on any of these accounts from date of entry of the Judgment until such time as the accounts are transferred, said gains or losses shall be equally split between the parties, as well.

(Chapter 13 Adversary Proceeding, Dkt. # 9-1, at 3.)  At issue in this litigation is an IRA held by Schwartz at Independence One ("the IRA").  (Chapter 13 Adversary Proceeding, Dkt. # 33 at 14.)

On June 30, 2000, the IRA contained assets of $76,122.74.  (*Id.*)   This balance fluctuated with the market, and on September 28, 2001,the IRA's statement reflected a balance of $68,248.32.  (*Id.* at 15.)  Independence One subsequently merged into a new brokerage servicer, Wealth Management Security Services, but the IRA was otherwise unchanged.  (*Id.* at 15–16.)   On May 5, 2004, Schwartz transferred the IRA

---

[1]This case involves a long and tortuous history of litigation between Schwartz and Liggett.  Citations to the record are taken from four dockets and are designated as follows: (1) *In re Robert L. Schwartz*, Case No. 10-71142 ("Schwartz Bankruptcy"); (2) *Pamela Liggett v. Robert L. Schwartz*, Case No. 11-5830 ("Chapter 13 Adversary Proceeding"); (3) *Pamela Liggett v. Robert L. Schwartz*, Case No. 12-5634 ("Chapter 11 Adversary Proceeding"); (4) Claims Register in *In re Robert L. Schwartz*, Case No. 10-71142 ("Claims Register").

to a UBS account, along with his shares in other retirement accounts he possessed.
(*Id.* at 16.)  Schwartz withdrew $254,450 from his IRA accounts in 2009, but it is unclear
from which accounts these funds were withdrawn.  (*Id.* at 17.)  Regardless, the portion
of the IRA to which Liggett was entitled (50%) was never transferred to Liggett.
(Schwartz Bankruptcy, Dkt. # 151, at 3.)

### B.  Schwartz's Chapter 13 Bankruptcy

On October 8, 2010, Schwartz filed a Chapter 13 bankruptcy petition.  (*Id.* at 17.)
At this point, the actions began to multiply.  On December 27, 2010, Liggett filed a
Proof of Claim for $82,859.24, listing "divorce/arbitration awards" as the basis for her
claim.  (Claims Register, Dkt. # 14-1; Schwartz Bankruptcy, Dkt. # 151, at 6.)  Liggett
also objected to Schwartz's eligibility for a Chapter 13 bankruptcy because his
unsecured debt exceeded the statutory debt limit, and filed a second, amended Proof of
Claim for $353,973.05 for "divorce/conversion" on June 15, 2011.  (Claims Register,
Dkt. # 22-1; Schwartz Bankruptcy, Dkt. # 151, at 7.)  This same day, Liggett also filed
an adversary complaint against Schwartz alleging that his failure to disclose the IRA
created a non-dischargeable obligation under 11 U.S.C. § 523(a)(2), (4), and (5).
(Chapter 13 Adversary Proceeding, Dkt. # 1, at 1.)  On July 8, 2011, despite Liggett's
objection, the bankruptcy court confirmed Schwartz's plan of reorganization. (Schwartz
Bankruptcy, Dkt # 87, at 1–2.)

#### 1.  Liggett's Adversary Action

In her Chapter 13 adversary action, Liggett argued that Schwartz actively
concealed the existence of the IRA, thereby making his debt to her non-dischargeable

4

under 11 U.S.C. § 523(a)(2), (4), and (5).  Specifically, Liggett argued that Schwartz's

actions constituted the use of false pretenses, false representation or actual fraud,

fraud or defalcation while acting in a fiduciary capacity, embezzlement, larceny, and

that Schwartz caused her a willful and malicious injury.  (Chapter 13 Adversary

Proceeding, Dkt. # 1, at 1–7.)  On September 13, 2011, the bankruptcy court held a

hearing and issued a bench opinion granting Schwartz's motion for summary judgment.

(Chapter 13 Adversary Proceeding, Dkt. # 33, at 11.)

        The bankruptcy court noted that Liggett had already brought a motion for

sanctions in Oakland County Circuit Court, arguing that Schwartz had fraudulently

concealed the IRA from her.  (*Id.* at 18–19.)  At the sanctions hearing in state court,

Liggett's attorney argued:

>       [I]f the court will bear with me, I will show the Court how this attorney[2]
>       committed a fraud and misrepresentation on the Court.  And I don't say that
>       lightly, Your Honor.

(Chapter 11 Adversary Proceeding, Dkt. # 4-3, at 17.)  The state court found that

Schwartz had not denied having the IRA throughout the state-court proceedings, and

that he had instead stated that he had forgotten about the IRA and could not locate it.

---

        [2]Although at first unclear who the statement "this attorney" refers to, a review of
the hearing transcript reveals that Liggett's attorney continually pointed out that
Schwartz is an attorney by trade, and that as an attorney, "he needs to put his money
where his mouth is."  (Chapter 11 Adversary Proceeding, Dkt. # 4-3, at 12.)  Thus, the
context of the hearing as a whole makes clear that Liggett's counsel was referring to
Schwartz as "this attorney" and not Schwartz's counsel in the state-court proceeding.
At any rate, this appears to be the factual determination made by the bankruptcy court
in reviewing the state-court proceedings, and it is not clearly erroneous.  (Chapter 13
Adversary Proceeding, Dkt. # 33, at 19.)

5

(*Id.* at 15.) Ultimately, the state court rejected Liggett's argument that Schwartz had

fraudulently concealed the IRA, stating:

> Well you know what? He had a lot of QDROs. There were rollovers. I'm not
> buying it—I'm not buying it. I'm not buying it. I think he forgot. I think he didn't
> keep good track of his money. I'm not going to assess attorney fees on that.

(*Id.* at 20.) The state court also noted that the IRA was disclosed in the Chapter 13

bankruptcy proceedings, Schwartz did not object to Liggett's claim, and that she would

be paid in full. When Liggett's attorney attempted to reargue the matter, the court

stated:

> Oh Ms. Sater [Liggett's attorney at the time], would you stop. She's going
> to get it in full. Your motion is denied.

(*Id.* at 21.)

In its hearing on Liggett's Chapter 13 adversary complaint, the bankruptcy court

expressed bewilderment as to why Liggett was seeking non-dischargeability:

> In his Chapter 13 plan, defendant has provided that he will pay plaintiff 100
> percent of her share of the IRA. Since the point of a nondischargeability
> action is to protect a creditor's right to collect a hundred percent of the
> amount owed and defendant in this case has already agreed to pay a
> hundred percent of whatever amount is determined to be owed on this IRA,
> the Court confesses it [i]s struggling to understand why plaintiff filed a
> nondischargeability action against defendant. The real issue between the
> parties is the amount defendant owes plaintiff for her share of the subject
> IRA, not whether that amount is a nondischargeable obligation.

(Chapter 13 Adversary Proceeding, Dkt. # 33, at 24–25.) Ultimately, the bankruptcy

court rejected Liggett's claims for non-dischargability under §  523(a)(2), (4), and (5).

The bankruptcy court concluded that Schwartz's obligation to pay Liggett one half of the

IRA was a contractual obligation, and that although Schwartz may have breached that

6

contract, this did not constitute embezzlement, fraud, or larceny under the bankruptcy code.

### 2. Liggett's First and Second Claims

In the meantime, the bankruptcy court also considered Liggett's first and second claims.  On July 18, 2011, the bankruptcy court entered an order rejecting part of Liggett's first proof of claim, but allowing her to claim 50% of the IRA as of December 31, 2008, an amount of $38,061.37.  (Schwartz Bankruptcy, Dkt. # 151, at 8.)  At this time, the bankruptcy court did not rule on Liggett's second proof of claim, as it was unclear what portion of the second proof of claim related to the IRA.  Liggett later specified her second claim as follows:

1. $240,000.00 cashed IRA results in distribution of $120,000.00

2. Conversion exists and amounts are trebled $360,000.00

3. Attorney fees awarded, amounts set forth approximate $20,000.00

(Schwartz Bankruptcy, Dkt. # 130, at 5.)  On September 22, 2011, the bankruptcy court held a hearing and ruled that Liggett had failed to set forth any facts supporting her claim for damages for conversion and attorneys' fees.  (Schwartz Bankruptcy, Dkt. # 142, at 39.)  The court further held that as of March 31, 2009, Liggett "was entitled to 50% of 54% of the balance in the UBS account," amounting to $38,607.06.  (*Id.* at 36–37.)  However, the court directed further briefing from the parties regarding how to determine the value of Liggett's 50% share of the IRA given that Schwartz liquidated the IRA prior to the payment of Liggett's share.

On January 30, 2012, the bankruptcy court issued an opinion determining when Liggett's share of the IRA was transferred, and the amount of interest she was due for

her portion of the IRA.  The court noted the parties agreed that the Chapter 13
confirmation date, July 8, 2011, should be used as the date of transfer.  (Schwartz
Bankruptcy, Dkt. # 151, at 11.)  Turning to the methodology for determining the rate of
return on Liggett's share of the IRA, the bankruptcy court adopted Schwartz's
suggestion for calculating Liggett's portion:

> First, Schwartz provides the name of the funds in the UBS account and the
> number of shares in each fund on the date the UBS account was liquidated,
> Marcy 19, 2009.  Next, Schwartz provides the value of the shares in the UBS
> account in March 19, 2009, when Schwartz liquidated that account, that
> amount being $126,658.65.[] Next, Schwartz takes the value of those same
> funds on July 8, 2011, that amount being $216,018.22.  Then, based on this
> Court's prior orders, because the rollover of the Independence One IRA
> accounted for 56% of the funds in the UBS account, and Liggett is entitled
> to 50% of the amounts attributable to the Independence One IRA, Schwartz
> asserts that Liggett is entitled to a claim in the amount of $60,485.10 (56%
> of $216,018.22 is $120,970.20; 50% of $120,970.20 is $60,485.10).

(*Id.* at 13.)  The bankruptcy court noted that although Liggett argued for a different
calculation, her preferred methodology was not clear and resulted in $225.90 less than
Schwartz's methodology.  (*Id.* at 13.)  Lastly, the court rejected Liggett's claim for
interest, reasoning that under Schwartz's Chapter 13 plan, unsecured creditors were
receiving far more than they would have under a Chapter 7 liquidation, and that no
unsecured claims were receiving interest.  (*Id.* at 15.)

## C.  Appeal to the District Court

Not content with the bankruptcy court's ruling that she was entitled to $60,485.10
from Schwartz's non-dischargeable obligation under the divorce decree, Liggett
appealed the bankruptcy court's orders:  confirming Schwartz's Chapter 13 plan,
granting summary judgment to Schwartz in the Chapter 13 adversary proceeding, and

8

determining the amount of Liggett's claim in the IRA.  (*See Liggett v. Schwartz* (*In re Schwartz*), Case Nos. 11-13160, 11-13161, 11-14834, 12-11055.)

The court addressed Schwartz's eligibility for bankruptcy for Chapter 13 protection first.  Noting that it "shar[ed] the bankruptcy court's seeming bewilderment at Liggett's all-out effort to thwart Schwartz's bankruptcy petition," the court nevertheless concluded that because Schwartz's unsecured debts exceeded the statutory limit in 11 U.S.C. § 109(e), the bankruptcy court's confirmation of Schwartz's reorganization plan had to be reversed.  (*Liggett v. Schwartz* (*In re Schwartz*), Case No. 11-13160, Dkt. # 15, at 2.)  For Liggett's remaining appeals, the court concluded that because Schwartz was ineligible for protection under Chapter 13, the bankruptcy court's remaining orders were not final appealable orders as they would be relevant only if on remand the bankruptcy court concluded that it must treat Liggett's renewed objections in a manner consistent with its prior rulings.  Because the court lacked jurisdiction to consider Liggett's remaining appeals, each appeal was dismissed without prejudice.  Crucially, the court recognized the possibility that the bankruptcy court might rely on the legal determinations it made under the Chapter 13 proceedings, and thereby ordered that Liggett would "retain[] the right to a review on the merits of the bankruptcy court's dismissal . . . to the extent that the bankruptcy court later relies upon that decision in any subsequent proceedings."  (*Liggett v. Schwartz* (*In re Schwartz*), Case No. 11-14834, Dkt. # 9, at 3; *see also Liggett v. Schwartz* (*In re Schwartz*), Case No. 12-11055, Dkt. # 8, at 3.)

9

### D.  Schwartz's Chapter 11 Bankruptcy

On June 5, 2012, the bankruptcy court converted Schwartz's bankruptcy to a

Chapter 11 bankruptcy.  (Schwartz Bankruptcy, Dkt # 185, at 1.)  On October 23, 2012,

the bankruptcy court held a confirmation hearing and heard oral argument regarding

Liggett's objections to Schwartz's bankruptcy plan.  The bankruptcy court noted

numerous times that Liggett's claim was being paid in full, (*see, e.g.*, Schwartz

Bankruptcy, Dkt. # 275, at 49) and that Liggett's only claim that it was not rested on her

argument that Schwartz converted her property, thus entitling her to treble damages

and attorneys' fees.  The court explained:

> The sole objecting party in this case is debtor's ex-wife, who is receiving a
> hundred percent payment on her claim under the plan, and, based on the
> history of the case, appears to be motivated by some other considerations
> possibly than simply obtaining [payment] on what the debtor owes her since
> the debtor has proposed to pay her a hundred percent of the amount she's
> owed pursuant to the judgment of divorce.

(*Id.* at 52.)  The bankruptcy court overruled Liggett's objections and confirmed

Schwartz's plan.

Liggett filed a third proof of claim, this time asking for $460,660.35 for "divorce

settlement/breach of fiduciary duty/conversion." (Claims Register, Dkt. # 24-1, at 1.)

After a hearing on the third proof of claim, the bankruptcy court sustained Schwartz's

objection to the claim and fixed the date of the claim as December 5, 2012 (thirty days

after Schwartz's Chapter 11 Confirmation Order).   (Schwartz Bankruptcy, Dkt. # 261, at

1–2.)  The bankruptcy court directed Schwartz to submit briefing regarding the

calculation of any additional value for the IRA for the period between the Chapter 13

and the Chapter 11 confirmation orders.  (*Id.*)

10

Schwartz filed a brief applying the bankruptcy court's earlier formula from his Chapter 13 case for calculating the IRA's value, arriving at a total of $61,931.36. (Schwartz Bankruptcy, Dkt # 283, at 2.)  The bankruptcy court allowed Liggett an opportunity to respond for the purpose of challenging Schwartz's mathematical calculations.  Instead, Liggett responded and argued for an alternative method of computing the value of dividends paid on the IRA which resulted in a total $3,041.34 higher than Schwartz's computation.  (*Id*. at 3.)  The bankruptcy court rejected Liggett's proposed method on the basis of *res judicata*, having already ruled on a method for valuing the IRA in Schwartz's Chapter 13 case.  (*Id.* at 4.)  The bankruptcy court therefore found that Liggett's claim would be allowed in the amount of $61,931.36.  (*Id.* at 5.)  Shortly thereafter, the bankruptcy court found that Liggett owed Schwartz $24,826 stemming from an arbitration award from their divorce case in state court. (Schwartz Bankruptcy, Dkt. # 311, at 26.)  Accordingly, the bankruptcy court granted a set-off to Schwartz, reducing Liggett's claim from $61,931.36 to $37,105.36.  (*Id.*)

As in the Chapter 13 proceeding, Liggett filed an adversary complaint again arguing that Schwartz's debt to her was non-dischargeable on the basis of embezzlement and conversion.  The bankruptcy court first noted that "[Schwartz] has already agreed that he has a non-dischargeable obligation to [Liggett] for her fifty-percent interest in the Independence One IRA pursuant to 11 U.S.C. § 523(a)(15)." (Chapter 11 Adversary Proceeding, Dkt. # 16, at 1.)  Thus, to the extent that Liggett's adversary complaint argued that Schwartz's obligation was non-dischargeable on the basis of § 523(a)(15) (relating to debts incurred as part of divorce decrees), the bankruptcy court held that Liggett's complaint was moot.  (Chapter 11 Adversary

11

Proceeding, Dkt. # 16, at 25–26.)  Regarding Liggett's renewed arguments that

Schwartz's actions constituted embezzlement or fraud, the bankruptcy court noted:

> Because these issues have been ruled on in the context of the claims
> process, and because [Schwartz] does not dispute that the IRA obligation is
> non-dischargeable, this Court is deeply troubled about the waste of judicial
> resources in continuing to litigate issues already decided by the court.

(*Id.* at 16.)  The bankruptcy court ultimately concluded that its ruling on these issues in

Schwartz's Chapter 13 case barred Liggett from re-litigating her claims under the

doctrine of *res judicata*.  (*Id.* at 18.)

## II.  STANDARD

District courts are vested with jurisdiction over appeals from "final judgments,

orders, and decrees" of the bankruptcy court.  28 U.S.C. § 158(a)(1).  "This finality

requirement is considered 'in a more pragmatic and less technical way in bankruptcy

cases than in other situations."  *Lindsey v. O'Brien, Tanksi, Tanser & Young Health

Care Providers of Conn.* (*In re Dow Corning Corp.*), 86 F.3d 482, 488 (6th Cir. 1996)

(citation omitted).  Any order "finally dispos[ing] of discrete disputes within the larger

case" may be appealed immediately.  *Id.*  (citation omitted).  The court reviews the

bankruptcy court's conclusions of law de novo and its findings of fact for clear error.  *B-

Line, LLC v. Wingerter* (*In re Wingerter*), 594 F.3d 931, 935–36 (6th Cir. 2010).  "A

factual finding will only be clearly erroneous when, although there is evidence to

support it, 'the reviewing court on the entire evidence is left with the definite and firm

conviction that a mistake has been committed.'"  *United States v. Ayen*, 997 F.2d 1150,

1152 (6th Cir. 1993) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573

(1985).  "Mixed questions of law and fact must be separated into their constituent parts

and each analyzed using the appropriate standard of review." *Mayor and City Council of Balt., Md. v. State of W. Va.* (*In re Eagle-Picher Indus., Inc.*), 285 F.3d 522, 527 (6th Cir. 2002).

## III.  DISCUSSION

Liggett appeals three orders: (1) the order granting Schwartz's motion to dismiss in the adversary case; (2) the order setting the IRA amount as $61,931.36; (3) the order confirming Schwartz's Chapter 11 bankruptcy plan.  Each order is addressed in turn.

### A.  *Res Judicata*

This case is in an odd procedural posture.  When the court vacated the bankruptcy court's Chapter 13 confirmation, it dismissed without prejudice Liggett's remaining appeals challenging the bankruptcy court's dismissal of her adversary complaint seeking non-dischargeability as well as her appeal challenging the bankruptcy court's determination of the amount of her unsecured claim against Schwartz.  The court noted that the orders forming the basis of Liggett's appeals would only be considered a "live" dispute affecting the parties' rights if, as Liggett predicted, the bankruptcy court converted Schwartz's Chapter 13 petition to a Chapter 11 petition and treated Liggett's claims in a manner consistent with its prior rulings in the defunct Chapter 13 proceedings.  However, at the time the appeals were before the court, it was unclear whether the bankruptcy court would choose this course of action.

On remand, the bankruptcy court converted Schwartz's Chapter 13 petition to a Chapter 11 petition.  When Liggett brought similar claims challenging the bankruptcy court's calculation of the amount of her claim as well as the non-dischargeability of her

13

claim, the bankruptcy court, citing *res judicata*, ruled that these issues had already been decided in a prior proceeding before the court.

*Res judicata* requires:  "(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their 'privies', (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action."  *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir. 1997) (emphasis omitted).  It does not appear that *res judicata* applies in this case.  The court dismissed Liggett's appeals as moot given the court's ruling that Schwartz was ineligible for Chapter 13 protection.  An appeal that is dismissed for mootness does not result in a final judgment on the merits to which preclusive effect must be given.  *See Fieger v. Corrigan*, 602 F.3d 775, 777 (6th Cir. 2010).   Additionally, the "subsequent action" for *res judicata* purposes was Liggett's Chapter 11 adversary complaint, a complaint that was filed as an objection to Schwartz's Chapter 11 plan, which proceeded under the same case number as Schwartz's Chapter 13 plan.  Given that the court vacated the previous Chapter 13 plan, it is not clear that Liggett's Chapter 11 adversary complaint challenging Schwartz's renewed bankruptcy petition under Chapter 11 can be said to be a "subsequent action" following a final adjudication on the merits.

Nevertheless, the bankruptcy court was not in error when it relied upon its previous rulings on the issues that Liggett raised in the Chapter 13 proceeding.  "Under the law-of-the-case doctrine, findings made at one point in the litigation become the law of the case for subsequent states of that same litigation."  *Rouse v. DaimlerChrysler*

14

*Corp.*, 300 F.3d 711, 715 (6th Cir. 2002).  Further, on appeal the court recognized the possibility that the bankruptcy court might rely upon its decisions in the Chapter 13 case for its subsequent rulings in the Chapter 11 case.  Although the orders forming the basis for the instant appeal turn on the bankruptcy court's application of *res judicata*, the substance of these orders relies on determinations made by the bankruptcy court during Schwartz's Chapter 13 case.  Therefore, bearing in mind the fluid nature of bankruptcy cases, *see Lindsey*, 86 F.3d at 488, the court will review the substance of Liggett's challenges, rather than simply reviewing the bankruptcy court's finding of *res judicata* in its most recent orders.

**B.  Liggett's Claims for Non-dischargeability**

Under Schwartz's Chapter 11 bankruptcy plan, Liggett is entitled to one-half of the IRA and this claim is non-dischargeable.  Schwartz does not contest this fact. Nevertheless, Liggett continues to pursue her quest for a ruling that Schwartz committed fraud, embezzlement, or conversion.  The only apparent reason for this appeal is that Liggett seeks a ruling that Schwartz committed conversion by failing to initially disclose the IRA, thus entitling her to enhanced damages, plus attorneys' fees, under Michigan law.

Michigan law does provide for treble damages, plus costs and attorney fees when a person steals, embezzles, or converts another person's property to his or her own use.  Mich. Comp. Laws § 600.2919a(1)(a).  Liggett relies on this statute to argue that Schwartz's actions with regard to the IRA constituted "fraud or defalcation while acting in a fiduciary capacity," "embezzlement," and "willful and malicious injury by the

15

debtor . . . to the property of another," thereby rendering his debt non-dischargeable under 11 U.S.C. § 523(a)(4), (6).[3]  As the party seeking to establish an exception to the discharge of a debt, Liggett must prove the requisite elements by a preponderance of the evidence.  *Grogan v. Garner*, 498 U.S. 279, 291 (1991).  "Exceptions to discharge are to be strictly construed against the creditor."  *Pazdzierz v. First Am. Title Ins. Co.* (*In re Pazdzierz*), 718 F.3d 582, 586 (6th Cir. 2013) (citation omitted).

　　*1.  Embezzlement*

　　In a move emblematic of what the court views as continuing obfuscatory conduct throughout the course of this ligation, Liggett surprised the court by stating for the first time during oral argument that her claim for embezzlement is not her "primary claim".  Liggett instead asserted that her "primary claim" is really for fraud or defalcation while acting in a fiduciary capacity.

　　Liggett advanced this position despite having:  (1) raised embezzlement as a separate count in her Chapter 11 Adversary Complaint, (2) never indicated to the bankruptcy court that she was abandoning the claim, and (3) argued that she "properly pled" an embezzlement claim in her appellate brief before the court.  (*See* Chapter 11 Adversary Proceeding, Dkt. # 1, at 3; Pg. ID # 769–70.)  Because it seemed apparent to the court (and Schwartz's counsel, judging by the discussion devoted to the embezzlement claim in her brief on appeal) that Liggett was indeed arguing that the bankruptcy court erred by rejecting her claim for embezzlement, the court will address

_____

[3]Although Liggett also raised a claim under 11 U.S.C. § 523(a)(2) in the Chapter 13 proceeding, she appears to have abandoned pursuit of this claim in her Chapter 11 Adversary Complaint.

16

what merit may be found in Liggett's embezzlement claim. Liggett's belated clarification regarding her "primary" claim is disingenuous. Liggett's excessive and litigious conduct demonstrates a disregard for judicial resources, and has induced a regrettable waste of time and money of those who are forced to defend against essentially frivolous claims.

Federal law defines "embezzlement" under 11 U.S.C. § 523(a)(4) as:

> the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come. A creditor proves embezzlement by showing that he entrusted his property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud.

*Brady v. McAllister* (*In re Brady*), 101 F.3d 1165, 1172–73 (6th Cir. 1996). "The 'fraud' required under § 523(a)(4) is fraud in fact, involving moral turpitude or *intentional* wrong." *Cash Am. Fin. Servs., Inc.* (*In re Fox*), 370 B.R. 104, 116 (6th Cir. 2007) (emphasis in original).

Liggett argues that the Oakland County Circuit Court's divorce decree gave her an immediate property interest in one half of the IRA, and that Schwartz's failure to disgorge this interest constituted embezzlement. However, as the bankruptcy court noted, "a debtor's use of property that is encumbered by the interest of a third party is generally a breach of a contractual obligation, not embezzlement." (Chapter 13 Adversary Proceeding, Dkt. # 33, at 31.) Liggett undoubtedly received a 50% interest in Schwartz's IRA due to divorce decree; however, at no point was the property entirely hers, nor did she entrust her property to Schwartz as required by the Sixth Circuit's test in *Brady*. A debtor simply cannot embezzle property that was rightfully in his hands to begin with.

17

*Morganroth & Morganroth, PLLC v. Stollman* (*In re Stollman*), 404 B.R. 244 (Bankr. E.D. Mich. 2009) is instructive.  In *Stollman*, the bankruptcy court considered whether the debtor's failure to disgorge 401(k) proceeds on which there were several attorney's liens constituted embezzlement within the meaning of § 523(a)(4).  The bankruptcy court noted that although the debtor's conduct in disposing of the proceeds of her 401(k) was "undoubtedly contrary" to the lien rights of her creditors, the creditors had never entrusted their property to the debtor because the proceeds were owned by the debtor.  *Id.* at 273.  Thus, because the relevant property was at all times owned by the debtor, the debtor's conduct did not meet the definition of embezzlement under § 523(a)(4).  *Id.*; *see also Oak Street Funding LLC v. Brown* (*In re Brown*), 399 B.R. 44, 47–48 (Bankr. N.D. Ind. 2008) ("One cannot steal or embezzle one's own property. . . . [A] debtor that misappropriates a creditor's collateral, and uses it for purposes other than repaying the creditor's loan, does not steal or embezzle that property."); *Trane Fed. Credit Union v. Conder* (*In re Conder*), 196 B.R. 104, 111 (Bankr. W.D. Wis. 1995) ("Where a creditor holds nothing more than a security interest in a debtor's property, the relationship is insufficient to support a finding of embezzlement."); *First Nat. Bank of Fayetteville, Ark. v. Phillips* (*In re Sisemore*), 882 F.2d 302, 304–05 (8th Cir. 1989) ("The Bank's security interest does not give it an absolute ownership interest nor does it defeat [the debtor's] ownership interest.  Because the funds belonged to [the debtors] subject to [the Bank's] security interest, the debtors could not have embezzled the funds.").  Similar to these cases, Schwartz originally owned the IRA and Liggett acquired a 50% interest in the proceeds of the IRA pursuant to the divorce decree.

18

Because Liggett never entrusted property that was hers to Schwartz, the bankruptcy court did not err in determining that Schwartz did not commit "embezzlement" under § 523(a)(4).

    *2. Fraud or Defalcation While Acting in a Fiduciary Capacity*

"In order to find a debt nondischargeable under § 523(a)(4) due to defalcation, [the Sixth Circuit requires] proof by a preponderance of the evidence of the following: (1) a preexisting fiduciary relationship; (2) breach of that fiduciary relationship; and (3) a resulting loss." *Commonwealth Land Title Co. v. Blaszak* (*In re Blaszak*), 397 F.3d 386, 390 (6th Cir. 2005). The term "fiduciary capacity" for the purposes of § 523(a)(4) is determined by federal, rather than state, law. *Id.* at 390. "Fiduciary capacity" is interpreted narrowly and limited to express or technical trusts; it does not encompass "constructive or implied trusts imposed by operation of law as a matter of equity." *Bd. of Trs. of the Ohio Carpenters' Pension Fund on Behalf of the Ohio Carpenters' Pension Fund v. Bucci* (*In re Bucci*), 493 F.3d 635, 639 (6th Cir. 2007).

    Liggett argues that the Oakland County Circuit Court had the power to equitably divide the marital property, including the IRA as part of its divorce jurisdiction. Under Michigan law, a divorce decree has "the same force and effect as a quitclaim deed of the real estate, if any, or a bill of sale of the personal property, if any, given by the party's spouse to the party." Mich. Comp. Laws § 552.401. Liggett cites *In re Combs*, 435 B.R. 467 (Bankr. E.D. Mich. 2010), to argue that the effect of the Oakland County Circuit Court divorce decree was to place Schwartz "as a constructive trustee of the IRA with the duty to transfer 50% of it to Liggett." (Pg. ID # 769.) In *Combs*, the bankruptcy

19

court addressed the debtor's argument that because an "Eligible Domestic Relations

Order" was never issued with regard to the debtor's pension, the debtor's ex-wife never

received a property interest in the pension, despite a divorce decree to the contrary.  *Id.*

at 469.  The bankruptcy court found that under Michigan law, the entry of a consent

judgment of divorce transferred a separate ownership interest to the debtor's ex-wife.

*Id.* at 474.  The court then held that the divorce decree created a constructive trust for

the benefit of the debtor's ex-wife.  *Id.* at 477.  At no point did the court address whether

a discharge under § 523(a)(4) applied.

Liggett's argument misses the point.  Assuming that the divorce decree created a

constructive trust in favor of Liggett, this constructive trust does not fall within the

definition of "fiduciary capacity" as used in § 523(a)(4).  *Bucci*, 493 F.3d at 639;

*Blaszak*, 397 F.3d at 391.  Thus, the bankruptcy court did not err in determining that

§ 523(a)(4) does not apply.

### 3.  *Willful or Malicious Injury*

Liggett also argues that Schwartz's debt to her is non-dischargeable as a result

of § 523(a)(6) which exempts from discharge debts incurred as the result of "willful and

malicious injury by the debtor to another entity or to the property of another entity."  In

order to be non-dischargeable, the injury must be both willful and malicious; the

absence of either element creates a dischargeable debt.  *Markowitz v. Campbell* (*In re

Markowitz*), 190 F.3d 455, 463 (6th Cir. 1999).  "'Willful' means 'voluntary,' 'intentional,'

or 'deliberate.'  As such, only acts done with the intent to cause injury—and not merely

acts done intentionally—can cause willful and malicious injury."  *Id.* at 464.  In contrast,

20

an act is "malicious" under § 523(a)(6) if it is "in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent." *Monsanto Co. v. Trantham* (*In re Trantham*), 304 B.R. 298, 308 (B.A.P. 6th Cir. 2004).

Schwartz responds that collateral estoppel bars Liggett from arguing that he had an intent to cause her injury, thereby defeating her claim that § 523(a)(6) applies. "[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). Under Michigan law, collateral estoppel applies when:

> 1) there is identity of parties across the proceedings, 2) there was a valid, final judgment in the first proceeding, 3) the same issue was actually litigated and necessarily determined in the first proceeding, and 4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding.

*Hardesty v. Hamburg Twp.*, 461 F.3d 646, 651 (6th Cir. 2006). Liggett contests only the third element of this test.

As discussed above, Liggett first argued that Schwartz had deliberately concealed and misrepresented the existence of the IRA in state court as part of a motion for sanctions. In her motion, Liggett argued that Schwartz had willfully concealed the existence of the IRA for years, and had repeatedly claimed that he had no knowledge of the IRA, despite knowing that Liggett was entitled to its proceeds. (Chapter 11 Adversary Proceeding, Dkt. # 8-4, at 1–4.) At a hearing on the motion, Liggett's attorney stated that Schwartz had "committed a fraud and misrepresentation on the Court" and that he had denied the very existence of the IRA. (Chapter 11

21

Adversary Proceeding, Dkt. # 4-3, at 15–17.)  The court rejected Liggett's argument, noting that Schwartz never denied the existence of the IRA, but merely stated that he could not locate it.  Ultimately, the court found that:  "He had a lot of QDROs. . . . I think he forgot.  I think he didn't keep good track of his money. . . . It has now been found." (*Id.* at 20.)

Liggett argues that collateral estoppel does not bar her claim of non-dischargeability under § 523(a)(6) because this claim was not presented in the state court proceeding.  Liggett further argues that the only issue presented to the state court was whether Schwartz had committed a fraud or misrepresentation to the state court regarding the existence of the IRA, and that any determination by the state court to the contrary was not "necessarily determined" as part of the court's ruling on the motion for sanctions.

The court does not share Liggett's narrow view of the state court's determination. A review of the transcript reveals that Liggett argued that Schwartz deliberately hid the IRA from her, and that he only disclosed it when forced to by the bankruptcy court.  The state court heard this argument and resoundingly rejected it, stating: "I'm not buying it." (*Id.*)

The state court ruled that Schwartz had not intentionally hid the IRA, and that he had instead lost track of the proceeds, disclosing them promptly once he re-discovered the funds.  As noted above, in order to qualify for non-dischargeability under § 523(a)(6), the debtor's actions must have been both willful and malicious.  Here, the state court determined that Schwartz's actions were negligent or accidental; a determination that necessarily precluded the bankruptcy court from finding that

22

Schwartz's actions were done with the "intent to cause injury." *Markowitz*, 190 F.3d at

464. Collateral estoppel applies to bar Liggett's argument that Schwartz's debt is non-

dischargeable under § 523(a)(6).

     *4. Divorce Decree*

     Liggett's last argument that Schwartz's debt is non-dischargeable is that

§ 523(a)(15) applies, which states that a bankruptcy discharge does not discharge a

debtor from any debt:

> to a spouse, former spouse, or child of the debtor . . . that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit.

It is hard to understand why Liggett raises this argument given that Schwartz has never

disputed that pursuant to the divorce decree, he owes her half of the IRA and that this

debt is non-dischargeable. The bankruptcy court dismissed this claim as moot and also

seemed at a loss for why Liggett would raise this argument, given that Schwartz has

conceded that his debt to Liggett is non-dischargeable under this same subsection.

     The answer to this puzzle appears to be that Liggett defines the property she

claims under § 523(a)(15) to be the treble damages she claims she is owed as a result

of Schwartz's alleged conversion, rather than the 50% interest in the IRA that was

actually awarded pursuant to the state court's divorce decree. (*See* Chapter 11

Adversary Proceeding, Dkt. 9-1, at 3.) Liggett asserts this novel legal theory without

any apparent support in the law, and given that Schwartz does not contest that he owes

Liggett 50% of the IRA as result of the divorce decree, the bankruptcy court was correct

to dismiss Liggett's argument as moot.  *See Day v. Klingler* (*In re Klingler*), 301 B.R. 519, 524 (Bankr. N.D. Ill. 2003) ("[A] claim is moot when the court can grant no effective relief because the plaintiff has already received all the relief he could.").

## C.  The Bankruptcy Court's Determination of the IRA's Value

Liggett argues that although the bankruptcy court properly determined the value of the IRA in the Chapter 13 proceedings, it erred in applying its formula to the Chapter 11 proceedings because it did not account for dividends that would have been earned between the Chapter 13 and Chapter 11 confirmation dates.   Liggett claims that the bankruptcy court's failure to properly apply its formula from the Chapter 13 proceedings resulted in a discrepancy of $3,041.34.   A bankruptcy court's determination of damages is reviewed for clear error.  *See Adell v. John Richards Homes Bldg. Co., L.L.C.* (*In re John Richards Homes Bldg. Co., L.L.C.*), 439 F.3d 248, 262 (6th Cir. 2006).

In her brief on appeal, Liggett points the court to a brief she filed with the bankruptcy court that allegedly provides "detailed information establishing that dividends were, in fact, declared on certain of the investments held in the former IRA." (Pg. ID # 782.)  A review of this brief reveals a scant page-and-a-half of argument, followed by thirty pages of financial records with certain items circled by Liggett. (Schwartz Bankruptcy, Dkt. 276, at 1–2.)  No explanation is provided for how these records support Liggett's argument, and Liggett appears to leave to the court the task of independently figuring out how the financial records demonstrate that the bankruptcy court's determination of damages is clearly erroneous.  Liggett may not delegate the responsibility for making her argument to the court.  *Emerson v. Novartis Pharm. Corp.,*

24

446 F. App'x 733, 736 (6th Cir. 2011); *Wimbush v. Wyeth*, 619 F.3d 632, 639 n. 4 (6th Cir. 2010) (stating that a party may not simply drop a "pile of paper on the district judge's desk and expect[] him to sort it out."). The bankruptcy court's determination of the IRA's value is not clearly erroneous.

### D.  Schwartz's Chapter 11 Confirmation

Liggett raises three objections to the bankruptcy court's confirmation of Schwartz's Chapter 11 plan: (1) the bankruptcy court improperly classified her claim as unimpaired, non-dischargeable; (2) the bankruptcy court improperly enjoined her from enforcing her claim outside of the Plan; and (3) the bankruptcy court improperly determined that Schwartz would not have to pay interest on Liggett's claim over the life of the Plan.

Addressing Liggett's second and third objections first, the court notes that Liggett did not raise either of these issues either in her written objections to the final approval of the plan or during the confirmation hearing.  (*See* Schwartz Bankruptcy, Dkt. ## 218, 231, 235, 275.)  Arguments not raised before the bankruptcy court are waived on appeal.  *See, e.g., Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008); *Bonner v. Sicherman* (*In re Bonner*), 330 B.R. 880, at *5 (B.A.P. 6th Cir. 2005) (unpublished).  Having failed to raise her objections prior to the confirmation of Schwartz's Chapter 11 plan, Liggett cannot raise them on appeal.

Liggett's remaining objection to the Chapter 11 confirmation is that her claim was improperly classified by the bankruptcy court as "unimpaired" when in fact the bankruptcy court reduced the value of her claim, thereby impairing it.  As discussed

*supra*, Liggett's continued argument that she is entitled to attorneys' fees and treble damages under a theory of conversion was properly rejected by the bankruptcy court. Liggett is unable to prove an exception to discharge under the bankruptcy code for conversion, and nevertheless, Schwartz has never contested that Liggett is entitled to an unimpaired 50% share of the IRA.  The bankruptcy court extensively analyzed the value of Liggett's 50% share and determined that she was entitled to $61,931.36, which is half of the value of the IRA had it not been liquidated by Schwartz.  The bankruptcy court further found that Liggett is entitled to 100% of this amount and that under the plan, Schwartz will have to pay monthly installments in order to satisfy Liggett's debt. (*See* Schwartz Bankruptcy, Dkt. # 275, at 41, 49–50.)

Nevertheless, Liggett continues to object.  As the bankruptcy court noted, Liggett is the sole objecting party (including unsecured creditors who received less than their full claims) and "appears to be motivated by some other considerations possibly than simply obtaining debt on what the debtor owes her." (*Id.* at 52.)  Liggett seems to argue that because she was deemed to be an unimpaired creditor, she was presumed to have accepted the bankruptcy plan and the bankruptcy court did not solicit her acceptance pursuant to 11 U.S.C. § 1126(f).  However, this argument ignores the fact that, despite not being required to do so, the bankruptcy court allowed Liggett to object to Schwartz's confirmation, heard her arguments that Schwartz's plan was inadequate, and nevertheless determined that Schwartz's plan met the statutory provisions of Chapter 11.  The court finds no reason to reverse the bankruptcy court's confirmation of Schwartz's Chapter 11 plan.

26

## IV.  CONCLUSION

IT IS ORDERED that in Case Number 13-10087, the bankruptcy court's "Order Granting Defendant's Motion to Dismiss" is AFFIRMED.

IT IS FURTHER ORDERED that in Case Number 13-10302, the bankruptcy court's "Order Denying Creditor Pamela Liggett's Motion for Reconsideration" is AFFIRMED.

IT IS FURTHER ORDERED that in Case Number 13-11100, the bankruptcy court's "Order Allowing Creditor's Claim No. 24 in the Amount of $61,931.36" is AFFIRMED.

        s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  March 14, 2014


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, March 14, 2014, by electronic and/or ordinary mail.

        s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522